IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Jeanette K Anderson,	Case No. 17-29971-beh

    Debtor.	Chapter 7

---

Virginia E. George,
Chapter 7 trustee,

    Plaintiff,	Adversary No. 19-02165-beh

v.

Donald Anderson and
Cheryl Leipzig and
Christine Kemen,

    Defendants.

---

## DECISION AND ORDER DENYING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AS TO DONALD ANDERSON

The Chapter 7 trustee has alleged that in Spring 2016, the debtor, Ms. Jeanette Anderson, sold real estate that she owned and which had formerly belonged to her father, and shortly thereafter made out checks to her three siblings, using the house sale proceeds. The amount transferred to the three defendants totaled $38,586.54. The amount transferred to her brother, Donald Anderson—the only remaining defendant—was $12,833.00.

Originally the trustee asserted that all $38,586.54 constituted avoidable transfers pursuant Wis. Stat. §§ 242.05 and 242.05 and 11 U.S.C. §§ 544(b) and 548(a)(1) and/or (b)(1), but she has settled her claims with two of the debtor's sisters. Mr. Anderson, the remaining defendant, is *pro se* in this

proceeding. The trustee has moved for summary judgment on her claim against him under section 548.

For the reasons explained below, the Court denies the trustee's motion for summary judgment.

The Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered under 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (H).

**FACTS**

The following facts, taken from pleadings and from affidavits or declarations submitted with the parties' summary judgment briefing, are undisputed unless otherwise noted.

On May 20, 2016, the debtor sold the real estate located at 7620 36th Avenue, Kenosha, Wisconsin. AP-ECF Doc. No. 29-2, at 2, ¶ 6.[1] This had been her father's house for which she was the sole titled owner due to a deed executed in 2005. *Id.* at ¶ 1. It was not the debtor's homestead. ECF Doc. No. 1, at 31. On May 25, 2016, using proceeds from the house sale, Ms. Anderson made out a cashier's check to Mr. Anderson in the amount of $12,833.00 and delivered the same to him. *Id.* at ¶ 7; AP-ECF Doc. No. 29, at 5, ¶ 13. Ms. Anderson did not receive anything of value for this transfer of money to Mr. Anderson. *Id.*

---

[1] Citations to the docket in the Bankruptcy Case No. 17-29971-beh are noted by "ECF Doc. No." Citations to the docket in the Adversary Proceeding No. 19-02165-beh are noted by "AP-ECF Doc. No."

On October 9, 2017—approximately 17 months later—Ms. Anderson filed for Chapter 7 bankruptcy relief, with the assistance of counsel. ECF Doc. No. 1. She listed the transfer made to Mr. Anderson as a gift in her Statement of Financial Affairs. *Id.* at 34. According to her petition, Ms. Anderson's total assets were $32,733.50[2] and her total liabilities were $27,684.89 on the filing date of her bankruptcy. *Id.* at 8. Schedule E/F listed one creditor owed less than $6,000.00 through December 2016 for "cash advances" and several credit card debts for cards last used in late 2016 and in early 2017, totaling less than $15,000. *Id.* at 20-22. Schedule I showed her monthly income as of the petition date was $3,283.67. *Id.* at 9. She listed her 2016 gross income from wages as $35,908. *Id.* at 32.

On September 23, 2019, the Chapter 7 trustee filed this adversary complaint. AP-ECF Doc. No. 1. After a period of discovery, the trustee filed a motion for summary judgment, accompanied by the trustee's own affidavit and a portion of the debtor's discovery responses obtained by Mr. Anderson. AP-ECF Doc. No. 29, 29-1, 29-2. The trustee's affidavit averred, in pertinent part:

> 2. My investigation of the Debtor's financial history prior to bankruptcy revealed that at the time of the transfer to Donald Anderson, the Debtor did not owe Donald Anderson any money.
>
> 3. Based on my review of the Debtor's financial records, I learned the Debtor was taking cash advances to pay her expenses because she did not have sufficient income to meet her monthly obligations at the time of transfer. The Debtor was in default on her debts at the time of the transfer because she was insolvent.

AP-ECF Doc. No. 29-1.

---

[2] Her assets included a 2016 capital loss carry forward of $15,305. ECF Doc. No. 1, at 14.

With his opposition to summary judgment, Mr. Anderson submitted a portion of the debtor' Chapter 7 petition and the debtor's responses to his discovery questions, AP-ECF Doc. No. 28. Those discovery questions and responses included the following:

> 1. On August 24, 2005, did you have a property deeded to you from your father? *Yes.*
> ...
> 6. On May 20, 2016, did you sell that property? *Yes.*
> ...
> 8. Why did you disperse funds to your siblings? *It was there [sic] inheritance from sale of house.*
>
> 9. At the time of dispersing the funds to your siblings, did you have any thoughts of filing for bankruptcy? *No.*

## DISCUSSION

**A.  Legal Standard for Summary Judgment**

Summary judgment is appropriate if the pleadings and affidavits on file show there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (incorporated by Fed. R. Bankr. P. 7056). The moving party bears the burden to establish that there is no genuine issue about any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The nonmoving party then must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).

At the summary judgment stage, the Court's role is *not* to weigh the evidence and determine the truth of the matter, but to determine whether there is something to try – "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. A factual dispute is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find in favor of the nonmoving party. *Id.* at 249. For a fact to be material, it must be "outcome-determinative under governing law." *Contreras v. City of Chicago*, 119 F.3d 1286, 1291-92 (7th Cir. 1997).

Even where many or all of the material facts are undisputed, the Court still must ascertain that the judgment is proper "as a matter of governing law." *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994). So, when a movant has failed to make an initial showing that the agreed-upon facts support a judgment in its favor, "the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019) ("[W]hen a movant fails to meet its initial summary-judgment burden, the burden does not shift to the nonmovant and the motion should be denied.").

**B.     Fraudulent Transfers**

Section 548 of the Bankruptcy Code, in relevant part, states:

**(a)(1)** The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including

any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

> **(A)** made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> **(B)(i)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
>> **(ii)**
>>
>>> **(I)** was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>>
>>> **(II)** was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>>
>>> **(III)** intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>>>
>>> **(IV)** made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a).

Section 548 of the Bankruptcy Code enables a trustee to avoid certain pre-petition transfers of property on the ground that the transfer was "fraudulent." One can understand why the term "fraudulent" would be alarming, perhaps an affront, to a lay person, particularly to a *pro se* transferee. But only some transfers under section 548 are wrongful due to bad intent.

A cause of action under section 548(a)(1)(A) is commonly referred to as "actual fraud," and requires the trustee to show that a transfer was effected with actual intent to defraud. *Carmel v. River Bank Am. (In re FBN Food Servs., Inc.)*, 82 F.3d 1387, 1394 (7th Cir. 1996); *In re Pop*, No. 04 B 43773, 2007 WL 1592957, at *3 (Bankr. N.D. Ill. May 24, 2007). The bulk of Mr. Anderson's arguments, in his filings[3] and at Court hearings, have railed against any "actual fraud" finding here, because, as he views it, he accepted funds which were transferred openly and in good faith, funds which the debtor herself regarded as Mr. Anderson's "inheritance." His summary judgment letter brief, while not citing to any Code section or caselaw, explained that the debtor "fully disclosed all information of the said tranfer [sic] to her attorney and the courts," and also that the Chapter 7 trustee "had full clear knowledge of the said transfer of funds prior to the end of the bankruptcy hearing held October 9, 2017" (the debtor's § 341 meeting of creditors), such that this could not be a fraudulent transfer. AP-ECF Doc. No. 30.[4]

But, as noted above, the Code provides a second cause of action under Section 548 that does not require wrongful intent (by the conveyor or the

---

[3] Mr. Anderson filed a response to the trustee's motion for summary judgment, and also a "reply" to the trustee's reply brief. AP-ECF Doc. No. 32. His latter submission is not expressly authorized by our Local Rules, nor did he seek advance permission for it from the Court. Nonetheless, the trustee has not objected to it, and given its brevity and the defendant's *pro se* status, the Court allows it.

[4] Just prior to summary judgment briefing, Mr. Anderson had filed on the docket copies of email correspondence between the Chapter 7 trustee and his siblings, AP-ECF Doc. No. 21 Without proper authentication, the Court does not consider the email correspondence as part of the record on summary judgment. *See* Fed. R. Civ. P. 56(e), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056.

receiver). Section 548(a)(1)(B) is often referred to as "constructive fraud" precisely because it lacks the element of intent. *In re FBN Food Servs., Inc.*, 82 F.3d at 1394. This cause of action allows the trustee to recover funds for the benefit of the bankruptcy estate based on timing of the transfer and financial circumstance of the debtor, without an analysis of the wholesome or improper intent behind the transfer.

Here, although a subheading of the trustee's complaint reads "Constructively Fraudulent Transfers," AP-ECF Doc. 1, at 2, its paragraph 18 hedges: "Therefore, the transfers are avoidable, *as either actively or constructively fraudulent transfers under Wis. Stat. … 548(a)(1) and/or (b)(1). Id.*, at 3 (emphasis supplied). The trustee's two briefs on summary judgment fail to specify on which subsection of Sec. 548 she relies, simply referring to the debtor's transfer of funds to Donald Anderson as a "fraudulent conveyance." *See* AP-ECF Doc. Nos. 29 and 31.[5] It may be tempting to use shorthand of sorts when the opposing party has no lawyer and is not a lawyer, but there is always time for clarity of analysis, as our rules require.[6] Accordingly, the Court will test whether movant has shown there is no genuine dispute of material fact, and entitlement to judgment as a matter of law, under each theory.

---

[5] The trustee's reply brief does state "Defendant makes arguments regarding the badges of fraud which are not applicable to the Plaintiff's ability to recover a fraudulent conveyance in this case." AP-ECF Doc. 31 at 1.

[6] Local Rule 9013(c) requires that all motions state with particularity the grounds and relief sought.

## 1. Analysis of Section 548(a)(1)(A)

As set out above, actual fraud may be found where the debtor made a transfer with the "actual intent to hinder, delay, or defraud" creditors. 11 U.S.C. § 548(a)(1)(A). Because rarely is there direct evidence of a debtor's intent underlying a transfer of property, a trustee may be able to prove actual intent through circumstantial evidence, circumstances which are referred to as "badges of fraud." *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710, 721 (Bankr. N.D. Ill. 2006) (citing *Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002)). These "badges" include:

1. Lack or inadequacy of consideration for the property transferred;
2. Existence of a family relationship between the transferor and transferee;
3. The transferor's retention of possession, control, benefits or use of the property;
4. The financial condition of the transferor both before and after the transfer occurred;
5. Existence or cumulative effect of a pattern or series of transactions or course of conduct at the onset of financial difficulties, or pendency or threat of suits by creditors; and
6. The general chronology and the timing of the transfers in question.

*Layng v. Pansier (In re Pansier)*, 613 B.R. 119, 148 (Bankr. E.D. Wis. 2020) (citing *Kellogg-Citizens Nat'l Bank v. DeBruin (In re DeBruin)*, 144 B.R. 90, 92 (Bankr. E.D. Wis. 1992)).

Here, the record establishes that there is no genuine dispute as to two of the badges. First, the transfer lacked adequate consideration; it is undisputed

that the debtor received nothing of value for the money transferred to her brother. Second, there is a close familial relationship, as transferor and transferee are siblings.

But the trustee has failed to present sufficient facts to establish the existence of any other badges of fraud, and thus the Court cannot grant summary judgment for the trustee under section 548(a)(1)(A). *See, e.g.*, *Hotel 71 Mezz Lender*, 778 F.3d at 601 ("Where, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim."). For example, although the trustee's affidavit asserts that "the Debtor was taking cash advances to pay her expenses because she did not have sufficient income to meet her monthly obligations at the time of the transfer," (*see* badge no. 4) this broad statement is unsupported by any evidence, such as bank records or other documentation of cash advances. True, Schedule E/F reflects one creditor from whom the debtor took cash advances at some point in 2016, but this limited disclosure does not establish the amount and timing of the cash advances vis-à-vis the debtor's transfer to her brother.

Mr. Anderson responds to the trustee's assertions with a copy of the debtor's declaration, in which she affirms that the sale of the house in 2016 did

not cause her to file for bankruptcy. AP-ECF Doc. No. 29-2.[7] Even if Mr. Anderson had not responded at all, however, the trustee still would lose. *See Kreg Therapeutics*, 919 F.3d at 415 (when a movant fails to meet its initial summary-judgment burden, the motion should be denied)*; Johnson v. Hix Wrecker Serv., Inc.,* 651 F.3d 658, 662 (7th Cir. 2011) ("A party opposing summary judgment does not have to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance.")).[8] For these reasons, the trustee has not met her burden of showing that she is entitled to judgment as a matter of law for "actual fraud" under § 548(a)(1)(A). Should she wish to pursue this theory, it must be pursued at trial.

### 2. Analysis of Section 548(a)(1)(B)

In order for the trustee to establish constructive fraud under § 548(a)(1)(B), she must prove the following elements:

1. a transfer of the Debtor's property or interest therein;
2. made within [two] year[s] of the filing of the bankruptcy petition;

---

[7] Mr. Anderson also argues that the debtor denies she was using cash advances in 2016 to pay her bills, but, like the trustee, he has not offered direct testimony of that discrete fact. AP-ECF Doc. No. 32. In addition, Mr. Anderson asserts that the trustee did not achieve proper service of her summary judgment motion, because she served him by U.S. Mail and not by certified mail or personal service. *Id.* This argument is without legal merit, because service by mail to the defendant's last known address complies with the rule. *See* Fed. R. Bankr. P. 7005(b)(2)(C).

[8] Neither the trustee nor Mr. Anderson have argued whether there are genuine issues of material fact as to the other badges of fraud, like pattern of conduct, *see, e.g. Sergeant v. Blue Mountain Wagyu Trust* (*In re Vorhes*), Case No. 16–1577, Adv. No. 17-9009, 2018 WL 1577980, *5 (Bankr. N.D. Iowa March 29, 2018) (describing "clear pattern of purposeful conduct" where debtor repeatedly transferred property to insider trusts in efforts to keep the property out of reach of potential judgment creditor, to benefit of his family, and trustee filed multiple adversary proceedings), or general chronology or timing.

3. for which the Debtor received less than a reasonably equivalent value in exchange for the transfer; and
4. either
    a. the Debtor was insolvent when the transfer was made or he was rendered insolvent thereby; or
    b. the Debtor was engaged or about to become engaged in business or a transaction for which his remaining property represented an unreasonably small capital; or
    c. the Debtor intended to incur debts beyond his ability to repay them as they matured.

*In re Knippen*, 355 B.R. 710, 724–25 (Bankr. N.D. Ill. 2006).

There is no genuine dispute as to the first three elements. First, that this was a transfer of the debtor's property is evident by the May 2016 cashier's check to Mr. Anderson. *See* 11 U.S.C. § 101(54)(D)(i). Second, the transfer was made approximately 17 months before the debtor filed for bankruptcy—within the Code's two-year provision. Third, it is undisputed that the debtor received nothing in exchange for conveying these funds to her brother.

The crux of this summary judgment motion centers on the fourth element. To satisfy 11 U.S.C. § 548(a)(1)(B)(4)(a), the Court looks to whether the debtor was insolvent at the time of the transfer, or became insolvent as a result of the transfer. The debtor's insolvency at the time of, or as a result of, the transfer is material because it is the condition of the debtor's financial affairs that casts the shadow of constructive fraud upon the transaction. *Dunham v. Kisak*, 192 F.3d 1104, 1110 (7th Cir. 1999). Section 101(32) of the Bankruptcy Code defines "insolvent":

The term "insolvent" means –

> (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of-
>
> > (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> >
> > (ii) property that may be exempted from property of the estate under section 522 of this title . . . .

11 U.S.C. § 101(32).

The Seventh Circuit interprets the term "insolvent" for purposes of section 548 using a balance sheet test. *Barber v. Prod. Credit Servs. of W. Cent. Ill. (In re KZK Livestock, Inc.)*, 209 B.R. 622, 625 (Bankr. C.D. Ill. 2002); *see also Baldi v. Samuel Son & Co., Ltd.*, 548 F.3d 579, 584 (7th Cir. 2008); *Covey v. Commerical Nat'l Bank of Peoria*, 960 F.2d 657, 660 (7th Cir. 1992). Under the balance sheet method, insolvency is determined by comparing the debtor's assets to the debtor's liabilities. *Baldi*, 548 F.3d at 581–82. Notably, under section 101(32)(A)(ii), exemptible assets are not part of this calculation. *See, e.g., Tavenner v. Smoot* (*In re Smoot*), 265 B.R. 128, 138–39 (Bankr. E.D. Va. 1999), *aff'd*, 257 F.3d 401 (4th Cir. 2001), *cert. denied*, 534 U.S. 1116 (2002) (excluding sizeable personal injury settlement from solvency calculation). If, then, the debtor's non-exemptible assets exceed her liabilities, the debtor is solvent; if the debtor's liabilities exceed those assets, the debtor is insolvent. *See Baldi*, 548 F.3d at 581–82. More often in a commercial context, the bankruptcy court determines what a willing buyer would pay for the debtor's entire package of assets and liabilities. *In re Knippen*, 355 B.R. at 722–23 (citing *Covey*, 960 F.2d at 660). If the price is positive, the debtor is solvent; if

the price is negative, the debtor is insolvent. *Id.* "A trustee may utilize appropriate means to prove insolvency, including balance sheets, financial statements, appraisals, expert reports, and other affirmative evidence." *Id.*

Here the trustee's complaint, brief, and affidavit all affirmatively state that the debtor Jeanette Anderson was insolvent at the time of transfer. ECF Doc. No. 1, ¶ 18; ECF Doc. No. 31, at 2; ECF Doc. No. 29-1, at ¶ 3. The trustee's brief asserts:

> 17. Debtor was insolvent at the time of the 2016 transfer to Donald. Debtor listed her annual income as $35,908.00. In May 2016 Debtor transferred the equivalent of a year salary, $35,160.50, to her siblings without receiving any reasonable value in exchange.
>
> 18. At the time of the transfer Debtor had approximately the same amount of debt as on the petition date and had insufficient funds to pay her debts as they became due. Her schedules reveal during this time period that Debtor was using cash advances to pay her obligations as they became due.

ECF Doc. No. 29, at ¶¶ 17-18.

As argument, the trustee's brief misses the mark. The trustee's first assertion—comparing the debtor's annual wage to the amount she transferred—does not directly relate to the debtor's assets and liabilities at the time of transfer and is therefore irrelevant under the Seventh Circuit's insolvency test. Next, the trustee creates a syllogism that because the debtor was insolvent at the time she filed her bankruptcy and, because there were no meaningful differences between her financial affairs then and at the time of transfer, she must have been insolvent when she transferred the funds to Mr. Anderson. *Id.* The problem is that the trustee does not shore up the syllogism.

While a review of the debtor's bankruptcy schedules and her Form 106 Summary of Assets and Liabilities confirms that the debtor's liabilities exceeded her non-exemptible assets by $14,371.39, rendering her insolvent at the time she filed her bankruptcy case, the present record does not confirm that "there were no meaningful differences between her affairs then and at the time of transfer," such that a trial court could not later find in favor of non-movant.

Debtor's schedules show that she had two non-exempt assets as of the petition date: the non-exempt portion of her 2014 Jeep ($7,097.16), and the non-exempt portion of her 2016 capital loss carry forward ($6,215.34). Many of her debts listed on schedule E/F were incurred in 2017, or late 2016. One obligation shown on E/F, to Best Egg, reflects some cash advances in 2016, but the actual dates and amounts are unknown, and the proof of claim filed by Best Egg reflects a standard loan, not a cash-advance situation. ECF Claim No. 2. In any event, the trustee's affidavit does not offer specific, appropriate means, such as bank records or credit card statements, to make the link between the debtor's circumstances at the time of her transfer to Mr. Anderson in May 2016 and her circumstances at the time she filed her bankruptcy case in October 2017. *See In re Knippen*, 355 B.R. at 722–23; *Johnson v. Gudmundsson*, 35 F. 3d at 1112 (explaining that even an unanswered motion for summary judgment cannot be granted unless the movant has shown that facts warrant judgment in her favor). In addition, the debtor declared that the

transfer of the sale proceeds from her father's house to her brother did not cause her to consider filing for bankruptcy protection.

Consequently, the trustee has not met her burden and she is not entitled to judgment as a matter of law for "constructive fraud" under § 548(a)(1)(B).

## CONCLUSION AND ORDER

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the Chapter 7 trustee's motion for summary judgment is DENIED. The Court will set a hearing to discuss scheduling for trial.

Dated: July 31, 2020

By the Court:

Beth E. Hanan
United States Bankruptcy Judge